UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MARK E. HARRIS )
 )
v ) NO. 2:07-CV-186
 )
WAYNE ANDERSON, MAJOR )
BRENDA HENSLY, PENNY TESTER, )
DR. PAUL DANIEL, and LIEUTENANT )
LORI DELP )

**MEMORANDUM and ORDER**

Mark E. Harris, a prisoner in the Sullivan County Detention Center, brings this *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging the violation of rights secured to him by the United States Constitution. Plaintiff has also submitted an application to proceed *in forma pauperis*, which reflects that he lacks sufficient financial resources to pay the required filing fee all at once. Plaintiff, however, is not relieved of the ultimate responsibility of paying the fee and therefore is **ASSESSED** the civil filing fee of $350.00.

The custodian of plaintiff's inmate trust account at the institution where he resides shall submit to the Clerk of Court, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to the plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. §

1915(b)(1)(A) and (B). Thereafter, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 under has been paid to the Clerk. 28 U.S.C. § 1915(b)(2). Remittances should be mailed to the <u>Clerk, United States District Court; 220 West Depot Street, Suite 200; Greeneville, Tennessee 37743.</u>

The Clerk is **DIRECTED** to send a copy of this order to the custodian of the plaintiff's inmate trust account at the facility wherein he is housed to ensure compliance with the above fee-collection procedures.

The three claims presented in plaintiff's complaint are predicated upon the following factual allegations. On June 1, 2007, following his extradition from the State of New York, plaintiff was taken into custody by Sullivan County sheriff's deputies. Plaintiff was using crutches because of a work-related right knee injury, which he describes more specifically as "'tears of the anterior and posterior horn meniscus (sic),' degenerative disease, and small joint effusion." He experiences other problems in his right knee and has chronic, severe pain and difficulty in walking. While plaintiff was held in New York, he was prescribed medication for pain, allergies, and asthma.

When plaintiff arrived at the Sullivan County Detention Center, his asthma medication was taken by the medical staff and, because his crutches posed a safety concern, he was placed in segregated confinement. As a result of his housing assignment, plaintiff was locked down 23 hours, had one hour to shower and use the telephone, and had no human contact,

2

no access to television, and none of the privileges enjoyed by inmates in general population. On June 2, 2007, plaintiff filled out a sick call slip, complaining about his medical needs and, at some point, he sent a written complaint to defendant Brenda Hensley. This complaint prompted the Health Administrator, defendant Nurse Penny Tester, to see plaintiff. Plaintiff showed defendant nurse the medical documentation from two New York orthopedic surgeons who were familiar with plaintiff's condition, but she rudely stated: "You will not have surgery while you're here; now you need to sit down in that cell and be quiet." Defendant Tester gave plaintiff ibuprofen 200 m.g. and advised him that, if he needed further pain medication, he must "buy it from the commissary." She refused to give him benadryl and advised him to purchase this drug at the commissary also.

Plaintiff's complaints continued and, on June 7, 2007, he was seen by Dr. Paul Shirill (:Dr. Paul").[1] Plaintiff explained his situation, but Dr. Paul stated, "You wont (sic) have that surgery here." Dr. Paul did not order any tests, did not refer plaintiff to an orthopedic doctor, did not order medications, and did not order surgery. Dr. Paul was also very rude, telling plaintiff to "push the button" if he experienced an asthma attack and suggesting that, if he disliked the treatment he was receiving, plaintiff leave Tennessee and not return. Plaintiff was returned to segregation to suffer alone and in silence. On June 11, 2007, Dr. Paul commented to others that plaintiff was feigning illness and had no need to use crutches.

On June 19, 2007, plaintiff was moved to a regular cell and, upon defendant Tester's

---

[1] In the caption, plaintiff identifies this defendant as "Dr. Paul Daniel," but in the body of the complaint, refers to this defendant as both Dr. Paul Shirill and Dr. Paul.

3

orders but without reason or explanation, his crutches were taken away. Plaintiff had to hop around on one leg. A regular cell has no handicap-accessible showers or bathrooms.

A third party contacted defendants Wayne Anderson, Hensley, and the facility's medical department about plaintiff's medical issues, but still plaintiff received no medical treatment. On June 29, 2007, Nurse Tester and Dr. Paul again refused to refer plaintiff to an orthopedic physician for a surgical evaluation, though they offered to return his crutches, in exchange for his agreement to go back to the segregation cell. Plaintiff declined the offer because, in his opinion, segregation is equivalent to punishment. Plaintiff filed grievances concerning his medical problems, but the response was unfavorable because the board who decides grievances is not impartial.

Plaintiff is housed in a cell in the maximum security area of the Detention Center and sleeps in a bunk less than two feet in front of two open toilets and a shower. Plaintiff has complained to defendant Hensley and others that this arrangement is unsanitary and unhealthy, but was informed that he could get a bunk in segregation and that state authorities have approved the placement of the bunk near the toilet.

The Court now must screen the complaint to determine whether it should be dismissed as frivolous, malicious or for failure to state a claim or whether monetary damages are sought from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. The Court now turns to the first of three claims asserted in the complaint.

I. Medical Claims

According to plaintiff, the medical treatment indicated by two orthopedic surgeons

4

is "surgical exploration of the right knee to repair the meniscus and the meniscus problem with a minium of four (4) weeks of physical therapy to follow."[2] It is his contention that denying him the recommended treatment shows deliberate indifference on the part of defendants and also violates the Americans with Disabilities Act.

A. *Deliberate Indifference*

Punishments that involve the unnecessary and wanton infliction of pain are proscribed by the Eighth Amendment. Deliberate indifference to the serious medical needs of prisoners constitutes an unnecessary and wanton infliction of pain and, therefore, a violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim such as this is composed of two components: an objective component, which requires plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires a showing of a sufficiently culpable state of mind —one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994).

Deliberate indifference is illustrated by a prison official who acts or fails to act despite

---

[2] "In each knee joint attached to and resting on the top joint surfaces of the tibia are two crescentic wedge shaped cartilaginous pads called the internal and external semilunar cartilages, or more commonly, the medial meniscus and lateral meniscus. Principal functions of the menisci are to increase the stability of the knee joint and to protect opposing joint surfaces of the femur and tibia." *Uberti v. Lincoln Nat. Life Ins. Co.* 144 F.Supp.2d 90, 93 n.2 (D.Conn.,2001)

knowledge of a substantial risk of serious harm to an inmate under his care. *Id*. However, where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, no viable Eighth Amendment claim is stated by allegations that a medical condition has been negligently diagnosed or treated, and the mere fact that the victim happens to be a prisoner does not convert it into a constitutional violation. *Estelle*, 429 U.S. at 106. Finally, a divergence of medical opinion regarding treatment does not amount to deliberate indifference. *Shofner v. Comacho*, 2000 WL 1359633, at*2 (6th Cir. Sept. 14, 2000) (citing, *inter alia*, *Estelle*, 429 U.S. at 107).

    Plaintiff's contention that he was denied exploratory surgery to correct his problems in his right knee does not satisfy the first component. Plaintiff maintains that the New York orthopedic surgeons *recommended* surgery—he does not say that those doctors *ordered* surgery. Nor does he indicate the date he incurred the injury or the date(s) that he saw the orthopedic surgeons in New York who recommended surgery. Certainly, those dates were prior to his extradition to Tennessee. This suggests that plaintiff's need for exploratory surgery for his work-related injury was not so pressing as to amount to a medical need of the gravity described by *Estelle*. This conclusion is bolstered by plaintiff's decision to stay in general population where he ambulated without crutches. Indeed, one court has determined that delaying surgery on an inmate's torn meniscus for one year does not violate the Eighth Amendment because it is a common knee injury for which conservative and non-surgical treatment is an appropriate course of action. *Culp v. Koenigsmann*, 2000 WL 995495

6

(S.D.N.Y. July 19, 2000).

The Eighth Amendment requires that reasonable steps be taken to address a substantial risk of serious harm to an inmate—it does not require the jail authorities to honor an inmate's demand for specific medical care or to give him the best care possible. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). That seems to be the situation here. As the Court reads this claim, plaintiff demanded that Dr. Paul follow a specific course of treatment [i.e., exploratory knee surgery] recommended by the New York specialists, and Dr. Paul refused to order the treatment specified by plaintiff. Although plaintiff did not receive the specific treatment he wanted, the Eighth Amendment does not guarantee a prisoner "unqualified access to health care." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). A prisoner need only receive constitutionally adequate medical care, and nothing alleged in the complaint shows that the medical attention given to plaintiff with respect to knee surgery fell beneath this standard. Plaintiff may be correct in asserting that Dr. Paul is not an orthopedic doctor, but defendant doctor still is a licensed physician, and his decision not to order surgery, as recommended by the New York doctors, reflects at most a disagreement about treatment or a difference of opinion between him and the out-of-state specialists. As noted, a difference of medical opinion is not a constitutional matter.

Plaintiff's second claim in this category is that he was denied pain medication. Missing from the claim are allegations of fact to support the "deliberate indifference" element. Defendant Nurse Tester gave plaintiff 200 m.g. of ibuprofen and, while this ibuprofen is not the same pain medication he was prescribed in New York, she did not deny

7

him pain medication altogether. As to defendant nurse's purported suggestion that, if plaintiff needed further pain medication, he should buy it at the commissary, there is no allegation that plaintiff had any further need for pain medication or, if he did, that he was deprived of medication he needed because he lacked funds to obtain it from the commissary. Put simply, there is no evidence of deliberate indifference.

Plaintiff's final contentions associated with his claims of deliberate indifference are that his prescribed asthma medications (i.e., Advair, Albuterol, and Singular) were taken by the medical staff, that Dr. Paul refused to order any medications, and that defendant doctor told plaintiff to "push the button" if he had an asthma attack. The fact that these three medications were prescribed indicates that they were helpful in managing plaintiff's asthma. Even so, there is no indication that plaintiff was experiencing an asthma attack at the time of the challenged conduct. *See Sulkowska v. City of New York*, 129 F.Supp.2d 274 (S.D.N.Y. 2001) (finding that an inmate who had not been denied medication for an actual asthma attack had failed to satisfy the objective test of an Eighth Amendment claim). While plaintiff may have suffered from chronic asthma, which is not necessarily a serious medical need, he has not pled that he was having an actual asthma attack, which, depending on its acuteness, may well amount to a sufficiently serious condition. *Board v. Farnham,* 394 F.3d 469, 484 (7th Cir. 2005) (noting that asthma may qualify as a serious medical condition "depending on the severity of the attacks").

Not only has plaintiff not shown that his asthma was a serious medical need at the time of defendants' questioned conduct, but he has not satisfied the state-of-mind component

8

of an Eighth Amendment claim. Defendant doctor's refusal to order medications and his reputed remark that plaintiff should "push the button" if he had an asthma attack in his cell, absent any allegations that he was then experiencing the symptoms of an asthma attack or an impending asthma attack, do not demonstrate the requisite mental state. Indeed, the push-the-button remark establishes that Dr. Paul recognized that plaintiff's condition could transform into a serious medical need if he had an asthma attack, that he did not disregard this potential risk to plaintiff, and that he instructed plaintiff as to the means to secure assistance if that became necessary. When jail authorities are aware of a substantial danger to an inmate's health or safety and do not disregard it but, instead, take reasonable measures to eliminate or avert the risk, there is no deliberate indifference, "even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 830.

B. *Americans with Disabilities Act*

To make out a claim under the ADA, plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, and (3) such exclusion, denial of benefits, or discrimination was because of a disability. 42 U.S.C. § 12132. The statutory definition of discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.*, § 12112(b)(5)(A). "An ADA plaintiff bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008) (citations and internal quotation

9

marks omitted). The ADA applies to state prisons. *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

In this case, plaintiff has not indicated which of his factual allegations he is advancing in support of his ADA claim. A claim which lacks factual underpinnings is conclusory, and a court need not conjure up facts not pled to support conclusory allegations. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988).

However, the Court will assume that the allegations plaintiff wishes to advance as ADA claims consist of his assertions that he was placed in a segregated cell because of his crutches and that, when he was moved to a regular cell, he lacked access to handicap facilities, his crutches were taken away, and he had to hop around on one leg. Plaintiff acknowledges that he was informed that his crutches posed a threat to institutional safety, presumably, because the crutches could easily have been used as a weapon by plaintiff or other inmates. Placing plaintiff in segregated confinement, seemingly, provided a reasonable accommodation for plaintiff's knee injury and need for crutches, while at the same time, allaying the jail administration's concerns for institutional safety. Moreover, given plaintiff's dissatisfaction with the conditions in segregated confinement [locked in cell 23 hours per day, one hour for phone usage and shower, no human contact, no television, and none of the privileges enjoyed by the general population], along with his allegations that segregation was causing him to lose control "mentally and emotionally," moving him to a regular cell eliminated those complained-of conditions. At any rate, plaintiff has not identified the accommodation he proposed, nor explained how that accommodation is objectively

10

reasonable. Plaintiff has no claim under the ADA.

II. <u>Slander Claims.</u>

In this claim, plaintiff asserts that, on June 11, 2007, Dr. Paul made the following remarks about plaintiff to Nurse Stephanie, Deputy Surgenour, and inmate Michael Major: "He's a fraud, probably trying to get money from an insurance company. He doesn't need those crutches." Plaintiff further asserts that he was offered his crutches back eight days later. According to his lights, defendant doctor's remarks were slanderous.

To state a viable § 1983 claim, a plaintiff must allege: 1) that he was denied a right privilege or immunity secured by the constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). Plaintiff has failed to show the first element, that is, the deprivation of a right secured by the Constitution and laws of the United States.

The Fourteenth Amendment to the United States Constitution protects against a state actor depriving a person of life, liberty, or property without due process of law. *See e.g., Bailey v. Floyd County Bd. Of Educ.*, 106 F.3d 135, 140-141 (6th Cir. 1999). Plaintiff's allegations do not support a Fourteenth Amendment due process claim. An allegation of defamation, without more, does not state a section 1983 claim because harm or injury to reputation, even if it is inflicted by an officer of the state, does not result in a deprivation of any "liberty" or "property" protected by the Due Process Clause. *Paul v. Davis*, 424 U.S. 693, 712 (1976). Thus, Dr. Paul's alleged slanderous comments do not infringe any constitutionally protected interest of plaintiff's. *See Cutshall v. Sundquist*, 193 F.3d 466, 478

(6th Cir. 1999).

## III. Claims of Cruel and Unusual Punishment

The allegations presented in support of this claim are that plaintiff's bunk in cell 3 of the maximum security area of the Detention Center is less than 2 feet from two open toilets and the cell shower. Plaintiff asserts that insects which gravitate to the toilets are constantly flying around and biting him and that he has to lie in his bunk, breathing urine and feces, while another inmate uses the toilet.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Jail conditions which involve the wanton and unnecessary infliction of pain and result in the serious deprivation of basic human needs violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981).

Plaintiff contends that, when he complained to defendant Hensely and another officer that having a bunk in such close proximity to latrine facilities was unsanitary and unhealthy, he was told that the State of Tennessee allowed bunks to be placed by the toilet and that he could get a bunk in segregation. The period during which plaintiff was housed in the segregation unit evoked complaints about the lack of human contact and other conditions, but not about bunk placement, so presumably, the location of the bunk in the segregation cell was not a problem for plaintiff. Thus, even if the Court accepts, but does not find, that placing an inmate's bunk near a toilet is the kind of extreme deprivation which society is unwilling to tolerate, plaintiff still must show deliberate indifference to such a deprivation.

12

When plaintiff called defendant Hensley's attention to the alleged unsanitary bunk location, she offered to house him in a cell in another area. Deliberate indifference will not be found where a defendant makes a reasonable effort to address a substantial risk of harm to an inmate's health or safety. *Farmer*, 511 U.S. at 844 (holding that prison officials "may be found free of liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). In the Court's opinion, this constitutes a reasonable attempt to resolve plaintiff's complaint about the location of his bunk. Here too, plaintiff fails to state a claim for an Eighth Amendment violation.

IV. Denial of Access to Courts.

Plaintiff has submitted an amended complaint asserting one additional claim. He contends that he has been denied access to the law library 98% of the time. Plaintiff further contends that, even though he coupled his request for [photocopies of?] twelve federal cases with citations to Supreme Court cases supporting his request, he was told to contact his attorney if he wanted help with his lawsuit. The above conduct, according to plaintiff, constitutes a clear denial of his access to courts and a hindrance to the prosecution of his legal claims.

Plaintiff correctly cites to *Bounds v. Smith,* 430 U.S. 817 (1977), and *Lewis v. Casey*, 518 U.S. 343 (1996), as relevant authority for his access-to-courts claim. Under *Bounds*, 430 U.S. at 822 , a prisoner has a right to meaningful access to the courts, but no freestanding right to a law library. *Lewis*, 518 U.S. at 351. To show a denial of this right of court access, the plaintiff must demonstrate prejudice or actual injury in his pursuit of a nonfrivolous

13

lawsuit. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996) (defining actual injury "as the late filing of a court document or the dismissal of an otherwise meritorious claim") (citing to *Lewis*, 518 U.S. at 351).

Though plaintiff has made a bare assertion that his ability to prosecute his claim has been restricted, he has alleged no facts to suggest prejudice or actual injury resulting from limitations on his law library usage. Therefore, these assertions also fail to state a claim under § 1983.

Therefore, based on the above reasoning, this action will be **DISMISSED** *sua sponte*, for failure to state a claim upon which relief can be granted under § 1983. Moreover, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure. And lastly, since the federal claims are being dismissed, the Court declines to exercise supplemental jurisdiction over any state law claims plaintiff may have raised, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), and they are **DISMISSED** without prejudice. 28 U. S. C. § 1367(c)(3).

A separate order will enter.

**ENTER**:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE